### IN THE

# SUPREME COURT

#### OF THE

## STATE OF WISCONSIN

#### AT THE JUNE TERM, 1850.

---

### ECKER and another v. MOORE and others.

1. EVIDENCE—REPLEVIN.—In an action of replevin, evidence as to the intent of the defendant in taking and appropriating the property, is immaterial and inadmissible, as his liability does not depend upon the *quo animo* which characterized the taking or conversion.
2. EVIDENCE.—Where an interrogatory is put to a witness which has no apparent relevancy to the case, and is objected to, it is the duty of counsel propounding it to disclose the matter proposed to be proved, and its relevancy; and failing to do so, it is proper for the court to sustain the objection.
3. EVIDENCE—STATUTE.—Where, upon notice from the plaintiffs to the defendants to appear and testify on the trial, two of them appear and testify, but the third does not, the plaintiffs have no right, under the statute, by reason thereof, to be sworn and testify in their own behalf. (See statute cited in opinion.)

(2 *Chand.* 85.)

ERROR to the Circuit Court for *La Fayette* County.

This was an action of replevin commenced originally before a justice of the peace by the plaintiffs, to reclaim a quantity of lead mineral alleged to have been taken from their possession by the defendants. An appeal was taken in the cause to the circuit court, and on the trial there the defendants obtained a judgment. On the trial at the circuit, the counsel for the plaintiffs took several exceptions to the ruling of the court as respects the admission and rejection of evidence offered by the plaintiffs. These exceptions sufficiently appear in the opinion of the court.

*A. F. Culver,* for plaintiff in error, in order to sustain the exceptions taken on the trial, cited 2 Stark. Ev. 739 ; Burnett R. 57 ; 2 Stark. Ev. 453 ; 5 Am. Law Cases, 35, 45.

*J. H. Knowlton,* for defendants in error, to show that replevin would not lie in a case like this, cited 8 Cow. 220.

LARRABEE, J. This was an action of replevin brought by the plaintiffs in error against the defendants in error, to recover the possession of a quantity of lead ore. The cause was commenced before a justice of the peace, and came to the circuit court of Là Fayette county by appeal. A trial was had in that court, and a judgment recovered by the defendants. Numerous exceptions were taken to the ruling of the judge before whom the cause was tried, all of which appear in the assignment of errors.

The first error assigned is as follows : The court erred in not permitting one of the defendants, *John S. Moore* (who was sworn as a witness under the statute), to answer the following question : " What reason they had for working and carrying away the mineral on Sunday ? " This question was asked and objected to, and by the court deemed improper, it is presumed, on the ground of irrelevancy. In order to decide whether the question was relevant to the issue, it is necessary to consider what the plaintiffs were required to prove in order

to maintain their action.  The action was replevin, and the wrongful act complained of was the taking and carrying away of the mineral spoken of.

The testimony, as stated in the bill of exceptions, showed that the defendants dug the mineral, and that they carried it, or a part of it, away from the place where they had dug it, on Sunday.  In order to recover, the plaintiffs were obliged to show their right to the immediate possession of the mineral, and the wrongful taking of it by the defendants.  I cannot see how any answer which the witness could give to the question asked could have had any effect upon the question before the jury. It is said that the witness might have disclosed the fact that the defendants knew they were taking property which did not belong to them, and that the plaintiffs might prove that fact. The authority cited by the plaintiffs' counsel in the argument to this point (2 Stark. Ev. 739) does not support the proposition.  In all cases where it is necessary to prove intention, it may of course be proved by any legitimate testimony, but this is not one of the cases.  The intention with which the defendants took the mineral had nothing to do with the question before the jury.  The plaintiffs might have recovered, although the defendants acted with the utmost good faith, and supposed that they owned the mineral.  The question was one of fact, and not of intention, and I cannot think that the decision of the court was improper in ruling that the question put to the witness was irrelevant.

The second error assigned is as follows : The court erred in not permitting the witness, *Thomas M. Crankshaw*, to answer the following question, to wit : " Is there, to your knowledge, any established rule or custom of the mines in the vicinity, in relation to the rights acquired by a person making a lead-ore discovery upon the land of another ?  If so, what is that rule ? "

There clearly was no error in ruling the question put to the witness to be improper.  He was asked if there was a rule, and if there was one, what it was.  The court could not see

that the question propounded to the witness had any relation to the one before the jury. The question put to the witness should have had some apparent connection with the case on trial, or have been accompanied by a statement of counsel showing its connection. If the plaintiffs intended to rely upon a custom to show their right to the mineral in dispute, they should have shown what the custom was which they intended to prove, in order to enable the court to judge of the propriety of admitting proof to establish it.

The third error assigned is as follows: The court erred in refusing to allow the said witness, *Thomas M. Crankshaw*, to answer the following question, to wit: "Has Mr. McCoskey, to your knowledge, any rule in relation to such rights upon this particular lot?" It is manifest that this question is obnoxious to the same objections which apply to the preceding one. It relates to the rule, if any, which McCoskey had in relation to the rights of those who dug mineral upon his land. The rule which the owner of the land had in relation to those who dug mineral upon his premises, might or might not have affected the relative rights of those who dug the mineral. The question was general, and had no apparent connection with the case. The court could not see that it had any relation to the question before the jury.

The fourth error assigned is as follows, to wit: The court erred in not permitting the following question to be put to the witness: "Do you or do you not know any rule of the mines or custom of the country making a north and south range a dividing line between contending claimants to the same range? Speak of your own knowledge." This question differs from the others, by which the plaintiffs sought to obtain proof of a custom, in this, that it is specific. The court could tell what the custom was which was sought to be proved, and thus judge of the propriety of admitting evidence to establish it. But I cannot see that the ruling of the court, by which it was excluded, was improper. There is nothing in the case which

Ecker and another vs. Moore and others.

makes the testimony relevant. It could not have benefited the plaintiffs to prove such a custom, because they could not found any right upon it. The statement of the evidence, contained in the bill of exceptions, shows that the plaintiffs were at work upon an east and west range of mineral on land belonging to one McCoskey. To show their right to recover, the plaintiffs introduced evidence tending to prove that the defendants dug the mineral in dispute on the same range. It further appears, from the bill of exceptions, that between the places where the parties were thus digging there was a north and south range crossing the east and west range. The testimony shows further, that the plaintiffs were digging west of this north and south range and the defendants east of it, and that the mineral in question was dug by the defendants at the place where they were thus digging, east of the range. Now, it could not have availed the plaintiffs to prove that there was a custom making a north and south range the dividing line between contending claimants thus situated, because the defendants obtained the mineral in dispute east of the range, while the plaintiffs were at work to the west of it. Nor could the plaintiffs be permitted to prove that there was no such custom, because the defendants did not rely upon it and had introduced no testimony tending to establish it. The bill of exceptions shows that testimony had been introduced tending to prove that the parties had *agreed* to make the north and south range the dividing line between their respective claims, but it does not appear that any testimony whatever had been introduced upon the subject of the custom. The testimony was therefore properly rejected.

The fifth error assigned is as follows, to wit: The court erred in not permitting the plaintiffs to be sworn as witnesses.

The bill of exceptions shows that the plaintiffs served a notice on one of the defendants (*Moore*) that they wished to have all the defendants sworn as witnesses on the trial. The notice was filed with the clerk, among the papers of the case, on the 17th

of April, 1848.   It was not served personally on either of the defendants, except *Moore*, nor on their attorney.   At the trial, *Moore* and *Crankshaw* appeared and testified, being called by the plaintiffs' counsel, but *Joslin* was not present.   His failure to appear and testify, or to produce his deposition, taken in pursuance of the statute, the plaintiffs contend, gave them the right to testify.   The statute gives either party the right to notify the adverse party that he wishes to have him sworn as a witness, and unless the party notified appears and testifies at the trial, or produces his deposition (which under certain circumstances he is allowed to do), the party giving the notice can himself be sworn as a witness.   Stat. 1841, p. 26.   I do not think that the service of the notice was sufficient.   There was no service on the attorney of the defendants, nor on either of the defendants personally, except *Moore*.   He appeared and testified, and *Crankshaw* also, who was not served with notice.   It does not appear where *Joslin*, the other defendant, was; all that the court can know is, that he was not present at the trial.   But, whether the notice was sufficient or not, it is clearly wrong for the plaintiffs to avail themselves of the testimony of two of the defendants, and then, because the remaining one did not appear, to have the right to testify themselves.   The statute contemplates that the party giving the notice shall have the right to testify, only when the party notified fails to appear; that only one party should testify. If the defendant *Joslin* had been present and had refused to be sworn, or if he had absented himself after having appeared at the trial, the plaintiffs might perhaps have moved to strike out the testimony of *Moore* and *Crankshaw*, the defendants who had testified, and then have offered themselves as witnesses; or they might have called upon all the defendants to be sworn in the first instance, and if they did not all appear, they could have insisted on their rights under the statute. But in this case the plaintiffs called upon *Moore* and *Crankshaw*, who appeared and testified, and after their testimony

had been received, *Joslin* was called.   I think that the decision of the circuit court was correct.

The sixth error assigned is as follows, to wit:  The court erred in instructing the jury that there was no such thing as two persons being in possession of the same premises, holding adversely, the one rightfully, the other tortiously.

There can, I think, be no doubt of the correctness of the ruling of the circuit court upon this question.   The nature of adverse possession was settled by this court in the case of *Whitney v. Powell, ante,* 52 ; but whether the ruling was right or wrong, the question involved does not appear to have had any connection with the case.

The seventh error assigned is as follows, to wit:  The court erred in instructing the jury that a person, having the right of working out a range of mineral, could not maintain replevin for lead ore dug and taken therefrom by another party holding adversely ;  that if the jury believed, from the evidence, that the plaintiffs had merely the exclusive right to dig the lead ore contained in said range, they could not find for the plaintiffs.

This assignment of error brings before the court a very important question, and that is, whether a person going upon the land of another, with his consent, to dig lead ore, and agreeing to give a certain portion of the ore which he may find as rent to the owner of the land, and commences working upon a lead or range of mineral, can maintain this action for ore wrongfully dug at another place on the same land and in the same range of mineral.   This point was not fully argued, and it being understood to be a very important question in the western part of the state, where contracts for mining are very often made, the court have concluded to give no opinion upon it, as no decision of it is necessary for the purpose of disposing of this case ; for we are all of opinion that the evidence, as stated in the bill of exceptions, shows that the plaintiffs gave the defendants permission to dig the mineral in question.   This

obviates the necessity of deciding whether the instructions given to the jury upon this point were correct or not.

The eighth assignment of error is as follows, to wit: The court erred in instructing the jury that it had heard no evidence that the plaintiffs had a lease of the premises from which the lead ore in dispute was raised.

This instruction clearly was not erroneous. There was no testimony in the case tending to show a lease of the land to the plaintiffs, except occupancy. If occupancy of the land by the plaintiffs, for the purpose of digging the ore upon it, tends to prove a lease from the owner, McCoskey, it could not extend to land not so occupied; and the testimony shows that the mineral in dispute was dug by the defendants on land occupied by them. Upon the whole, we are of opinion that the judgment should be affirmed.

Judgment affirmed.